[Cite as *State v. Ross*, 2012-Ohio-1389.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 25778 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| RICHARD L. ROSS, II | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 10 08 2210 |

DECISION AND JOURNAL ENTRY

Dated: March 30, 2012

MOORE, Judge.

{¶1} Appellant, Richard Ross, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms in part, reverses in part, and remands this matter to the trial court for further proceedings consistent with this opinion.

I.

{¶2} Richard Ross and Angel Davis were involved in a romantic relationship intermittently for five years. On June 8, 2010, Ross allegedly gained entry into Davis' apartment and physically attacked her. The Summit County Grand Jury indicted Davis on one count of domestic violence in violation of R.C. 2919.25(A), a third degree felony, two counts of endangering children in violation of R.C. 2919.22(A), first degree misdemeanors, one count of burglary in violation of R.C. 2911.12(A)(2), a second degree felony, and one count of domestic violence in violation of R.C. 2919.25(C), a first degree misdemeanor.

{¶3}   Prior to trial, the court dismissed one count of endangering children.  The case proceeded to jury trial, and after the State rested, Ross moved to dismiss the remaining count of endangering children, which the trial court granted.  The jury deliberated as to the remaining charges and returned a guilty verdict on the two domestic violence counts and a not guilty verdict on the burglary count.  The trial court sentenced Ross to four years of incarceration on the felony domestic violence conviction and to 180 days of incarceration on the misdemeanor domestic violence conviction, to run concurrently.  The court further ordered Ross to pay the costs of the prosecution.  Ross timely filed a notice of appeal and presents six assignments of error for our review.  We have reordered and consolidated certain assignments of error for ease of discussion.

II.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT OVERRULED [ROSS'] CRIM. R. 29(A) MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE THE STATE PRESENTED INSUFFICIENT EVIDENCE TO SUSTAIN THE CONVICTIONS.

{¶4}   In his second assignment of error, Ross argues that his convictions were not supported by sufficient evidence.  We do not agree.

{¶5}   The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production. *Id.* at 390 (Cook, J. concurring).  In making this determination, an appellate court must view the evidence in the light most favorable to the prosecution:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind

of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶6} Here, Ross specifically challenges the evidence as insufficient to prove that Ross and Davis were "family or household members," as is required in order to support his convictions of domestic violence. As Ross has limited his argument to this element of the offense, we limit our discussion accordingly.

{¶7} R.C. 2919.25 defines the offense of domestic violence, and provides in pertinent part,

> (A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
>
> (B) No personal shall recklessly cause serious physical harm to a family or household member.
>
> (C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member.
>
> * * *
>
> (F) As used in this section * * *:
>
> (1) "Family or household member" means any of the following:
>
> (a) Any of the following who is residing or has resided with the offender:
>
> (i) A spouse, a person living as a spouse, or a former spouse of the offender;
>
> (ii) A parent, a foster parent, or a child of the offender, or another person related by consanguinity or affinity to the offender;
>
> (iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.

(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.

(2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.

{¶8} Here, Ross and Davis were not married, and Ross was not the father of Davis' children. Thus, the State sought to establish Ross' status as a "family or household member" through proof that he was a "person living as a spouse." In the context of a "person living as a spouse," the Ohio Supreme Court has held that element of "cohabitation" requires proof that the individuals shared familial or financial responsibilities and proof of consortium. *State v. Williams*, 79 Ohio St.3d 459, 465 (1997), paragraph two of the syllabus. The Court further explained,

> Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations. These factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact.

*Id.* at 465.

{¶9} As part of the State's case-in-chief, Davis testified that she and Ross met in 2006, and they had an "on and off" boyfriend/girlfriend relationship since that time until May of 2010. During their relationship, Davis and two of her children had resided with Ross at his mother's house for six months, and then moved in with Ross and his mother again after his mother relocated. Davis' children love Ross and call him "Dad," and Ross has assisted with the care of Davis' children, and potty trained Davis' son.

{¶10} In 2010, Ross lived with Davis on Lake Street until Davis moved to Long Street. Although she did not consider Ross to live with her on Long Street, he had some outfits in her

apartment there and stayed there occasionally. In approximately May of 2010, Davis ended her relationship with Ross.

{¶11} Based on the above, viewed in the light most favorable to the State, a reasonable trier of fact could conclude that Ross and Davis had lived together as spouses within the purview of R.C. 2919.25, as the State produced sufficient evidence that Ross and Davis cohabitated within the five-year period preceding June 8, 2010.

{¶12} Accordingly, Ross' second assignment of error is overruled.

## ASSIGNMENT OF ERROR I

[ROSS'] CONVICTIONS FOR DOMESTIC VIOLENCE ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} In his first assignment of error, Ross argues that his convictions were against the manifest weight of the evidence. We do not agree.

{¶14} When a defendant asserts that his conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶15} Here, Ross again limits his argument to challenging the weight of the evidence demonstrating that he and Davis were "family or household members," and we limit our discussion accordingly.

{¶16} In support of his position that he and Davis were not family or household members, Ross argues that Davis' testimony established that he was only a "guest." Davis testified that Ross had no key to the apartment, that he did not live with her on Long Street, and

that he did not receive mail at her apartment. Ross further argues that there was no evidence that Ross and Davis shared financial or familial responsibilities. Instead, Ross argues that Davis' testimony established that Ross only assisted in household finances as a friend and assisted in caring for Davis' children in a role similar to that of a babysitter. In addition, Ross' probation officer testified that the address Ross provided to him as his own was not Davis' address.

{¶17} However, current cohabitation is not required to demonstrate that an individual is a "family or household member" within the meaning of R.C. 2919.25. Instead, a "family and household member" includes a person living as a spouse "who is residing or has resided with the offender." R.C. 2919.25(F)(1)(a). A "person living as a spouse" includes an individual who "has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2). Here, the alleged offense occurred on June 8, 2010. Davis testified that she and Ross began a romantic relationship in 2006 lasting until May of 2010, and during their relationship, Davis and two of her children had resided with Ross at his mother's house for six months, and then moved in with Ross and his mother again after his mother relocated. Ross assisted in caring for Davis' children, and lived with her on Lake Street until Davis moved to Long Street, where he stayed on occasion.

{¶18} After reviewing the entire record, weighing the inferences and examining the credibility of witnesses, we cannot say that this is the exceptional case where the jury clearly lost its way and created a manifest miscarriage of justice in finding Ross guilty of domestic violence in respect to that offense's essential element of a "family or household member," in that Ross and Davis had cohabitated within the five-year period preceding June 8, 2010.

{¶19}   Accordingly, Ross' first assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT SENTENCED ROSS FOR TWO COUNTS OF DOMESTIC VIOLENCE AS THEY WERE ALLIED OFFENSES OF SIMILAR IMPORT SUBJECT TO MERGER UNDER R.C. 2941.25.

{¶20} In his third assignment of error, Ross argues that the trial court committed plain error by failing to merge his two sentences for domestic violence, as the offenses constituted allied offenses of similar import.

{¶21} At trial, Ross did not object to the separate sentences on the two domestic violence counts. Where a party has failed to raise an objection in the trial court, the objection may still be assigned as error on appeal if a showing of plain error is made. *State v. Hairston*, 9th Dist. No. 05CA008768, 2006-Ohio-4925, ¶ 9; Crim.R. 52(B). However, notice of a plain error is taken with the utmost caution and only to prevent a manifest miscarriage of justice. *State v. Bray*, 9th Dist. No. 03CA008241, 2004-Ohio-1067, ¶ 12. Therefore, we will not reverse the trial court decision unless it has been established that the trial court outcome clearly would have been different but for the alleged error. *Id.*

{¶22} R.C. 2941.25 provides that,

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶23} Here, Ross argues that the two charges of domestic violence were allied offenses of similar import, and thus it was plain error for the trial court to sentence him on both counts. In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, ¶ 44, the Ohio Supreme Court held that

in determining whether two offenses are allied offenses of similar import, "the conduct of the accused must be considered." The court must first determine "whether it is possible to commit one offense *and* commit the other with the same conduct," and, if so, then "the court must determine whether the offenses were committed by the same conduct, i.e. 'a single act, committed with a single state of mind.'" *Id.* at ¶ 48, 49, quoting *State v. Brown*, 119 Ohio St. 447, 2008-Ohio-4569, ¶ 50 (Lanzinger, J. concurring). If the same conduct constituted both offenses, then they must be merged. *Johnson* at ¶ 50. Failure to merge allied offenses of similar import constitutes plain error, and prejudice exists even where a defendant's sentences are to run concurrently because "a defendant is prejudiced by having more convictions than are authorized by law." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31

{¶24} Here, the indictment charged that, on June 8, 2010, Ross committed felony domestic violence in violation of R.C. 2919.25(A) by causing injury to Davis and committed misdemeanor domestic violence in violation of R.C. 2919.25(C) by causing Davis to believe he would cause her imminent physical harm.

{¶25} At trial, Davis testified that, in the early hours of June 8, 2010, she heard a little bumping sound on her door while she was in bed asleep with her son. She then heard Ross ask her to let him inside. Davis told Ross that he could not come in, and he then forced the door open and said he wanted to talk to her. She replied that she did not want to talk to him, at which point Ross began striking her with closed fists. Ross hit Davis approximately ten to fifteen times before Davis' son awoke, jumped on Ross, and told Ross to get off of his mom. Ross flung the boy off of him, and Davis ran out of her door toward her steps. Ross caught up with her and dragged her down the steps, tearing her shirt, before running away from the residence.

{¶26} The State contends that this evidence established that the two counts of domestic violence "were based on separate conduct which could not possibly result in the commission of both offenses." As to the R.C. 2919.25(C) offense, the State contends that "Ross' conduct in appearing at the apartment in the middle of the night, knocking on the door, refusing to leave, and forcibly entering the home, and refusing to leave provided a sufficient basis for Davis to believe he would cause her imminent physical harm." As to the R.C. 2919.25(A) offense, the State contends that the physical altercation that ensued after Ross gained entry was separate conduct.

{¶27} The sentencing entry here was journalized on December 29, 2010, the same day that the Court decided *Johnson*. In light of *Johnson*, we sustain Ross' third assignment of error and remand this matter to the trial court for a determination as to whether the two domestic violence counts were allied offenses of similar import subject to merger. *Johnson* at ¶ 49-50. If so, the State must elect which charge will be merged into the other for the purposes of sentencing. *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 43.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN ASSESSING COURT COSTS AGAINST ROSS WITHOUT COMPLYING WITH R.C. 2947.23(A).

In his fifth assignment of error, Ross argues that the trial court committed plain error by ordering him to pay court costs without providing him notice as required by R.C. 2947.23(A).

R.C. 2947.23(A) provides in relevant part,

(A)(1) In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution, including any costs under section 2947.231 of the Revised Code, and render a judgment against the defendant for such costs. At the time the judge or magistrate imposes sentence, the judge or magistrate shall notify the defendant of both of the following:

(a) If the defendant fails to pay that judgment or fails to timely make payments towards that judgment under a payment schedule approved by the court, the court may order the defendant to perform community service in an amount of not more than forty hours per month until the judgment is paid or until the court is satisfied that the defendant is in compliance with the approved payment schedule.

(b) If the court orders the defendant to perform the community service, the defendant will receive credit upon the judgment at the specified hourly credit rate per hour of community service performed, and each hour of community service performed will reduce the judgment by that amount.

{¶28} In *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, ¶ 20-24, the Ohio Supreme Court determined that a trial court's failure to notify a defendant that it is imposing court costs at the sentencing hearing requires a case to be remanded for the purpose of providing such notification and allowing the defendant to request a waiver, if desired. However, here, the trial notified Ross at sentencing that he would be obligated to pay the costs of the prosecution. Yet, the trial court did not notify Ross that his failure to pay the costs could result in imposition of community service or that Ross would receive credit toward the costs from any community service so imposed. *See* R.C. 2947.23(A)(1). In *State v. Debruce*, 9th Dist. No. 25574, 2012-Ohio-454, ¶ 38-39, this Court recently concluded that it is reversible error for the trial court to fail to comply with the community service notifications of R.C. 2947.23(A)(1)(a) & (A)(1)(b), and "the proper remedy is to reverse the trial court's imposition of court costs and remand for the proper imposition of court costs in accordance with the requirements set forth in R.C. 2947.23(A)(1)."

Accordingly, Ross' fifth assignment of error is sustained, and we remand this matter to the trial court for the proper imposition of court costs.

## ASSIGNMENT OF ERROR IV

ROSS WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN HIS TRIAL COUNSEL FAILED TO ARGUE THAT THE TWO COUNTS OF DOMESTIC VIOLENCE

WERE ALLIED OFFENSES OF SIMILAR IMPORT SUBJECT TO MERGER UNDER R.C. 2941.25.

## ASSIGNMENT OF ERROR VI

ROSS WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN HIS TRIAL COUNSEL FAILED TO ARGUE THAT THE TRIAL COURT'S IMPOSITION OF COURT COSTS UNDER R.C. 2947.23(A) WAS DEFECTIVE.

{¶29} In his fourth and sixth assignments of error, Ross argues that his trial counsel rendered ineffective assistance by failing to argue that his domestic violence counts were allied offenses of similar import and by failing to argue that the court's imposition of court costs was defective.

{¶30} In light of our disposition of Ross's third and fifth assignments of error, we decline to address his fourth and sixth assignments of error, as they have been rendered moot. *See* App.R. 12(A)(1)(c).

### III.

{¶31} Ross' first and second assignments of error are overruled. Ross' third and fifth assignments of error are sustained. We decline to address Ross' fourth and sixth assignments of error as they have been rendered moot. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part, and
cause remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CARLA MOORE
FOR THE COURT

CARR, P. J.
DICKINSON, J.
CONCUR.

APPEARANCES:

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.